

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
NOV 25. 2008
NOV 2 5 2008

Judge David H. Coar
United States District Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 594 |
| vs. | ) | Judge David Coar |
| | ) | |
| CHARMAINE RICKETTE | ) | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant CHARMAINE RICKETTE, and her attorney, PATRICK WALSH, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C) and Rule 11(c)(1)(A), as more fully set forth below.  The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with conspiracy to commit bank robbery, in violation of Title 18, United States Code, Section 371 (Count 1), bank robbery, in violation of Title 18, United States Code, Section 2113(a) (Count 2), and use of a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c) (Count 3).

3.     Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4.     Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charges to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty

to Counts Two and Three of the indictment.  Count Two charges defendant with bank

robbery, in violation of Title 18, United States Code, Section 2113(a).  Count Three charges

defendant with knowingly possessing a firearm in furtherance of, and using and carrying that

firearm during and in relation to, a crime of violence, in violation of Title 18, United States

Code, Section 924(c).

## Factual Basis

6.      Defendant will plead guilty because she is in fact guilty of the charges

contained in Counts Two and Three of the indictment.  In pleading guilty, defendant admits

the following facts and that those facts establish her guilt beyond a reasonable doubt:

        a.      With respect to Count Two of the indictment:

Defendant admits that on or about August 6, 2006, at Chicago, in the Northern District

of Illinois, Eastern Division, she, by force, violence and by intimidation, did take from the

person and presence of a bank employee approximately $130,945 belonging to and in the

care, custody, control, management, and possession of the TCF Bank located at 635 North

Dearborn, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit

Insurance Corporation; in violation of Title 18, United States Code, Sections 2113(a) and 2.

Specifically, in August 2006, defendant was employed as a teller at the TCF Bank

located at 635 North Dearborn, Chicago, Illinois (referred to herein as "the bank") and had

2

been so employed for several months. During the time that defendant was employed at the bank, Individual A, who was a long-time friend of defendant's, would occasionally ask her questions about the bank, including questions about how the bank operated, who worked at the bank, the security measures taken at the bank, and how much money was stored within the bank on certain days. On several occasions, Individual A made comments about robbing the bank that defendant took to be joking.

During the weekend before August 6, 2006, Individual A began asking very specific questions about her bank, including who would be working on Sunday. At this point, defendant knew that Individual A was planning on robbing the bank. At a party several days before the bank robbery, defendant had a conversation with Individuals A and B about the robbery. Individual A stated that he and Individual B had both been in the bank recently, casing the bank.

Defendant provided information to Individuals A and B about bank procedures and security and told them that she was responsible for closing the bank's doors at closing time. She also told them that she would let them in at closing time. Defendant told Individuals A and B that there would be only one other person working with her that day. Individuals A and B told defendant to lock the door after they entered the bank and after all of the other customers had left the bank.

Individuals A and B also asked defendant about whether the bank used dye packs and she told him that the dye packs rest on a plate inside of the vault. Individuals A and B told

defendant that they would have handguns and would be wearing disguises. Individuals A and B also stated that they would give defendant a share of the proceeds if she made sure the robbery went smoothly.

A day or two before the robbery, defendant and Individual A and B had a final meeting to go over the specifics of the bank robbery. They discussed that defendant would let Individual A and B into the bank and then lock the door behind them. Defendant also explained how the vault worked and that it required two codes to open the vault and two keys to open the inner drawers. Individual B told defendant that she would get $30,000 for carrying out her part of the bank robbery.

On or about August 6, 2006, Individual B entered the bank just before 3:00 p.m., which was when the bank was scheduled to close that day. Defendant recognized Individual B when he entered the bank and realized that Individual B was going to go through with the bank robbery that day. Individual B stood in the bank for several minutes and waited for other bank customers to leave the bank. Defendant waited until all the other customers had left the bank, then locked the door as Individual B had directed her to do.

Individual B then approached the other bank teller working that day and asked about a bank deposit he was pretending to make. While speaking with the teller, Individual B reached across the teller counter and grabbed the teller's hands. Individual B showed the teller a small silver handgun and then jumped over the teller counter. Individual B put the handgun to the teller's head and demanded money. The teller gave Individual B money from

4

the teller drawers. After obtaining money from the teller drawers, Individual B demanded money from the vault. Individual B ordered defendant and the teller to open the vault. Individual B then removed money from the vault, but left behind the dye packs that were in the vault. Before leaving the bank, Individual B asked defendant to see if anyone was outside the bank, then asked defendant to let him out the front door. Defendant walked Individual B to the front of the bank and let him out of the bank, as they had agreed that she would do.

Defendant acknowledges that $130,945 was taken during the robbery and that, at the time of the robbery, the deposits of the bank were insured by the Federal Deposit Insurance Corporation.

Several days after the robbery, defendant met with Individual A, who gave her about $200. Individual A told defendant that he arrived at the bank robbery late and when he arrived, the bank's front door was already locked he could see that Individual B was inside committing the robbery. Individual B met with defendant on several other occasions and each time gave her about $200.

      b.    With respect to Count Three of the indictment:

Defendant admits that on or about August 6, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, she knowingly possessed a firearm in furtherance of, and used and carried that firearm during and in relation to, a crime of violence, for which she may be prosecuted in a court of the United States, namely a violation of Title 18, United States Code,

Section 2113(a), as more fully set forth in Count Two of the indictment; in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

Specifically, based on her discussions with Individuals A and B, defendant knew that Individual A and Individual B were planning to bring guns with them to use during the August 6, 2006 robbery of TCF bank in which she participated. Defendant also admits that during the robbery, Individual B showed the teller a small silver handgun and later put the handgun to the teller's head and demanded money.

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

### Maximum Statutory Penalties

8. Defendant understands that the charges to which she is pleading guilty carry the following statutory penalties:

a. Count Two carries a maximum sentence of 20 years' imprisonment. Count Two also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Two the judge also may impose a term of supervised release of not more than three years.

b. Count Three carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 7 years. The sentence of imprisonment on Count

Three is required to be consecutive to the sentence on Count Two. Count Three also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Three, the judge also may impose a term of supervised release of not more than five years.

      c.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

      d.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which she has pled guilty, in addition to any other penalty or restitution imposed.

      e.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment, and the minimum sentence is 7 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points and disagree where indicated:

7

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level for the charge in Count Two of the indictment is 20, pursuant to Guideline §2B3.1(a);

ii. Two level are added, pursuant to Guideline § 2B3.1(b)(1) because the property of a financial institution was taken during the offense;

iii. Two levels are added, pursuant to Guideline § 2B3.1(b)(7) because more than $50,000 and less than $250,000 was taken during the offense;

iv. It is the government's position that two levels are added, pursuant to Guideline § 3B1.3, because defendant abused a position of private trust in a manner that significantly facilitated the commission or concealment of the offense. It is defendant's position that this enhancement does not apply;

v. Two levels are added, pursuant to Guideline § 3C1.1 because defendant willfully obstructed or imped, or attempted to obstruct or impede, the administration of justice with respect to the investigation of the instant offense of conviction;

vi. With respect to Count Three of the indictment, pursuant to Guideline § 2K2.4(b) and 18 U.S.C. § 924(c)(1)(D)(ii), a seven-year term of imprisonment

8

must be imposed as to Count Two to run consecutively to any other term of incarceration imposed on the defendant because defendant committed an offense under 18 U.S.C. § 924(c)(1)(A)(ii), namely brandishing a firearm during and in relation to a crime of violence.

vii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct.  If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

viii.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.    **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the

government, defendant's criminal history points equal zero and defendant's criminal history category is I.

   d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, it is the government's position that, with respect to Count Two, the anticipated offense level is 25, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 57 to 71 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. It is the defendant's position that, with respect to Count Two, the anticipated offense level is 23 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 46 to 57 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. With respect to Count Three, defendant is subject to a term of 84 months' imprisonment, to be served consecutively to the sentence imposed on Count Two. Defendant also acknowledges that she is subject to a statutory minimum sentence of 7 years' imprisonment.

   e. Defendant and her attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation

Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

f.    Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Cooperation

11.    Defendant agrees she will fully and truthfully cooperate with the United States in any matter in which she is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois.  This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding.

Defendant agrees to the postponement of her sentencing until after the conclusion of her cooperation.

## Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and statutory minimum sentence and to impose the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guidelines range and statutory minimum sentence rests solely with the Court.

13.     If the government moves the Court, pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence, as set forth in the preceding paragraph, this Agreement will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 25 percent of the combination of the low end of the applicable guidelines range and the seven year consecutive sentence provided by 18 U.S.C. § 924(c)(1)(D)(ii). Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and

imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

14.     If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence, as set forth above, this plea agreement will not be governed, in any part, by Federal Rule of Criminal Procedure 11(c)(1)(C), the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw her plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e).

15.     Regarding restitution, the parties acknowledge that the total amount of restitution owed to TCF Bank is $130,945, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the

amount outstanding at the time of sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

16.    Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to this defendant.

### Presentence Investigation Report/Post-Sentence Supervision

18.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

19.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or

14

refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of her sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20.     For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced.   Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

21.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 594.

22.    This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

23.    Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where

16

actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

b.    **Waiver of appellate and collateral rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) her attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates

18

directly to this waiver or to its negotiation, nor does it apply to a request by defendant pursuant to Sentencing Guideline §1B1.10 and 18 U.S.C. § 3582(c) for a reduction of sentence as a result of an amendment to the Sentencing Guidelines applicable to defendant and expressly made retroactive by the United States Sentencing Commission.

       c.     Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

       24.    By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

## Other Terms

       25.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

       26.    Defendant understands that pursuant to Title 12, United States Code, Section 1829, her conviction in this case will prohibit her from directly or indirectly participating in the affairs of any financial institution insured by the Federal Deposit Insurance Corporation

(FDIC) except with the prior written consent of the FDIC and, during the ten years following her conviction, the additional approval of this Court. Defendant further understands that if she violates this prohibition, she may be punished by imprisonment for up to five years and a fine of up to $1,000,000.

## Conclusion

27.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

28.     Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.   Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

30.   Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney.   Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: __11/25/08__


_____
PATRICK J. FITZGERALD
United States Attorney

_____
CHARMAINE RICKETTE
Defendant

_____
MAGGIE SCHNEIDER
Assistant U.S. Attorney

_____
PATRICK WALSH
Attorney for Defendant


21